## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA

CANDICE CHAPMAN; MICHAEL )
LITTLEFIELD; STEDMAN KINE, )
                       )
       Plaintiffs,           )
                       )
v.                           )       Case No.: 2:15-cv-125-WHA
                       )
THE CITY OF CLANTON,      )
                       )
       Defendant.        )

### BRIEF in Support of the CITY of CLANTON'S MOTION TO DISMISS

COMES NOW, Defendant, the City of Clanton, and, pursuant to Fed. R. Civ. P. 8(a) and 12(b), files this Brief in Support of its Motion to Dismiss the Plaintiffs' Complaint, averring as follows:

### Introduction

Plaintiff Candice Chapman, amid numerous charges that have been filed against her in the Clanton Municipal Court, pled guilty to possession of marijuana, was given a 30 day suspended jail sentence, and assessed a $251 fine and court costs of $650, totaling $901. [Doc. 1, p. 4].  Plaintiff Michael Littlefield, amid numerous charges filed against him in the Clanton Municipal Court, pled guilty to "illegal possession of prescription drugs," was given a 30 day suspended jail sentence, and assessed fines and costs totaling $987.  [Doc. 1, p. 5].  Plaintiff Stedman Kine, also amid numerous charges filed against him in the Clanton

Municipal Court, pled guilty to "possession of marijuana, attempt to elude, and resisting arrest" and on a separate occasion, pled guilty to "theft of property;" he received a 30 day suspended sentence on each charge and was assessed fines and costs totaling $2,475.  [Doc. 1, p. 7-8].  All three Plaintiffs repeatedly failed to report to their probation case manager as directed by the Clanton Municipal Court and they were subsequently imprisoned on the aforementioned charges to which they pled guilty. *See generally* Doc. 1, Attachments A through N.

The Plaintiffs have claimed that they could not afford to pay the fines and costs assessed against them.  They completely mischaracterize their fines and costs as "court debt" [Doc. 1, p. 5, ¶ 22, 24; p. 7, ¶ 31; p. 10, ¶ 45; p. 13, ¶ 60, ¶ 61], rather than what they are: punishment for being convicted of breaking the law, and a deterrent for doing so again in the future.[1]  Additionally, the records attached to their Complaint show that Candice Chapman failed to report to her probation case manager on fourteen (**14**) occasions [Doc. 1, Attachment C], that Michael Littlefield failed to report to his probation case manager on two initial occasions

---

[1] The Plaintiffs further mischaracterize the Clanton Municipal Court's imposition of probation, fines and costs levied against persons convicted of criminal offenses as a "debt collection system for traffic tickets." [Doc. 1, p. 10, ¶ 45].  Apparently, the Plaintiffs fail to appreciate that they were convicted of crimes ranging from stealing to possession of illegal drugs, not traffic related offenses.  All such references throughout the Complaint should be stricken pursuant to Fed. R. Civ. P. 12(f) as "impertinent" or "scandalous."  *See, e.g., Aoki v. Benihana, Inc.*, 823 F.Supp.2d 759, 764 (D. Del. 2012)(defining scandalous matter as "that which improperly casts a derogatory light on someone, most typically on a party to the action").  Clearly the Plaintiffs repeated, hyperbolic, misleading, and inflammatory references to "fines and costs" as "debt" serves only to improperly cast derogatory light on Clanton.

just days after his guilty plea[2] [Doc. 1, Attachment G], and that Stedman Kine

failed to report to his probation case manager on nine (**9**) occasions [Doc. 1,

Attachment M].  The Plaintiffs claim harm from their imprisonment on the charges

for which they were convicted, and from the manners in which the Court sought to

collect the fines and costs assessed against them.  However, the Plaintiffs have

sued the City of Clanton, rather than the Clanton Municipal Court, for what they

erroneously assert are the City's policies and practices. [Doc. 1, p. 2, ¶'s 1-6].

### All Claims Against the City of Clanton
### Under 42 U.S.C. § 1983 are due to be Dismissed

Section 1983 "is not itself a source of substantive rights," but merely

provides "a method for vindicating federal rights elsewhere conferred." *Baker v.

McCollan*, 443 U.S. 137, 144, n. 3 (1979).  The first step in any such claim is to

identify the specific constitutional right allegedly infringed. *Graham v. Connor*,

490 U.S. 386, 394, (1989); *Baker v. McCollan*, 443 U.S., at 140.  The Plaintiffs,

though, have not provided upon what facts they claim the only Defendant, the City

of Clanton, violated what claimed constitutional or other federal right.

To assert a cognizable § 1983 claim against the City of Clanton, the

plaintiffs are required to allege plausible facts to support a viable theory of

municipal liability based on more than the mere alleged actions or misconduct of

---

[2] Municipal Court records also indicate that Mr. Littlefield, no stranger to criminal charges, failed to report to his probation case manager regarding numerous convictions in the Clanton Municipal Court on no less than **39** occasions in 2013 and 2014.

some agent, servant, or employee of the City. This is true because municipalities may not be held liable for alleged § 1983 violations under a traditional *respondeat superior* theory. *See Monell v. Dep't of Social Services*, 436 U.S. 658 (1978) and its progeny. It is well settled that municipalities may only be held liable for a municipal employee's alleged violation of another's constitutional rights when the employee's actions are in "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." *Monell*, 436 U.S. at 694; *see also, Skop v. City of Atlanta*, 485 F. 3d 1130, 1145 (11th Cir. 2007)(citing *Monell*, 436 U.S. at 694-95); *City of Canton v. Harris*, 489 U.S. 378 (1989).

Accordingly, to establish municipal liability against Clanton, the plaintiffs must not only show that their rights were violated, but that Clanton has or had a custom or policy that infringed upon or constituted deliberate indifference to their rights, and that such custom or policy actually caused the violation. While negligently inflicted harm is beneath the protections of the U.S. Constitution, *County of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998), constitutional torts, like common law torts, still require proximate cause. *See Carey v. Piphus*, 435 U.S. 247, 257-58 (1978)(recognizing that the tort rules defining elements of damages and the prerequisites for the recovery of damages provide the appropriate starting point under § 1983 as well); *Bivens v. Six Unknown Federal Narcotics Agents*, 403

4

U.S. 388, 409 (1970).  The plaintiffs can establish this requisite "official custom or policy," a necessary element in bringing claims under § 1983, in one of two ways: (1) by identifying an officially promulgated policy of Clanton, or (2) by identifying an unofficial custom or practice, usually shown through the repeated acts of the final policymaker of the City of Clanton. *See, e.g., Grech v. Clayton County*, 335 F. 3d 1326, 1329-30 (11th Cir. 2003).

Moreover, it must be shown that the policy or custom was the moving force and cause of the plaintiffs' constitutional violation.  *Id*. at 1330; *see also Board of the County Comm'rs v. Brown*, 520 U.S. 397, 403 (1997).   "A municipality may be held liable under § 1983 if the plaintiff shows that a 'custom' or 'policy' of the municipality was the 'moving force' behind the constitutional deprivation." *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489 (11th Cir. 1997)(citing *Monell*, 436 U.S. at 690-94 (1978). "A policy is a decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality." *Id*. (citing *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1479-80 (11th Cir. 1991). "A custom is a practice that is so settled and permanent that it takes on the force of law." *Id*. (citing *Monell*, 436 U.S. at 690-91).

A municipality may be liable for the actions of an official with "final policy making authority" in a certain area of the city's business "when the challenged

action falls within that authority." *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1480 (11th Cir. 1991).  "Whether a particular official has final policy making authority is a question of state law." *Id.*

The "policies or customs" in this case that the Plaintiffs allege violated their constitutional rights, though, were not created or adopted by the City of Clanton, but rather the Clanton Municipal Court.  The Clanton Municipal Court is governed not by the City of Clanton, but pursuant to the Code of Alabama. *See* Ala. Code §§ 12-14-1, *et seq*.  The Alabama Supreme Court, not the municipality, provides the rules for administration of the municipal court administrative agency. § 12–14–52.

> Since the Supreme Court now has the initial primary duty to make and promulgate rules governing **practice and procedure in all courts**, as well as rules of administration **for all courts**, all such rules made and promulgated by the Supreme Court shall be filed in the office of the Clerk of the Supreme Court and published in the official report of decisions.

Ala. Code § 12-2-19.  The Alabama Supreme Court, therefore, is the final policy maker regarding all courts.   Moreover, the Alabama Constitution, Art. VI, § 145, specifically prescribes the jurisdiction of municipal courts and the minimum qualifications of the judges presiding over them.

Therefore, the policies being attacked by the Plaintiffs in this case have not been established or created by the City of Clanton, but rather its Municipal Court under the authority promulgated to it by the Alabama Code, the Alabama

Constitution, and the Alabama Supreme Court.[3]  The City of Clanton "can never be

liable under § 1983 for the acts of those [officials] whom the local government has

---

[3]      As already mentioned, but discussed in less detail than in this note, the municipal courts of Alabama operate as an independent judicial branch of government governed by state law. The Alabama Code establishes that "the judicial power of the ***state*** is vested exclusively in a unified judicial system" and that the municipal courts of Alabama are part of that "unified judicial system" which also includes the Supreme Court, both of the state's appellate courts, the state circuit courts, and the state district courts. Ala. Code Sec. 12-1-2 (emphasis added).

The operations of the municipal courts are governed entirely by state law Under Title 12 of the Alabama Code, the Title governing all state courts. The municipal courts were created by State Law, not by the individual municipalities. *See* Ala. Code Sec. 12-14-1.

The Alabama Constitution, Art. VI, Sec. 145 prescribes the jurisdiction of the municipal courts and the minimum qualifications of its judges. The Alabama Constitution only gives the municipalities the responsibility of paying for the Courts and the power to appoint the judges thereto. The Alabama Code further defines judicial qualifications, terms and appointment procedures, including providing for the appointment of a presiding judge. *See* Ala. Code Sec. 12- 14-30.

The municipal courts report to state authorities. State law requires the clerks of the circuit, district and municipal courts to prepare a monthly report to be approved by the Chief Examiner of Public Accounts of the State of Alabama and the State Comptroller showing all fines, costs, and the like collected. *See* Ala. Code Sec. 12-1-19.

State law provides that "[t]he sheriffs of the counties and law enforcement officers of the municipalities of the State of Alabama shall obey the municipal judge having legal authority in faithfully executing the warrants and processes committed to them for service according to their mandates." Ala. Code Sec. 12-14-4.

The State Code further provides for how bail, trials, and traffic infractions are to be handled. Ala. Code Sec. 12-14-5 through 12-14-8. The State Code governs the authority the Municipal Court to continue cases, remit fines, establish work release programs and the like. Ala. Code Sec. 12-14-10. A mayor's sole power relative to a municipal court's judicial functions are akin to those of a governor relative to Alabama's circuit and district courts, *i.e.*, that of clemency. *See* Ala. Code 12-14-15.

In essence, the municipal courts relieve the district court's workload by taking cases that would, in the absence of the municipal court be handled by the county district court. *See* Ala. Code 12-14-17(b) (explaining that cases are transferred to district court where a city chooses to abolish its municipal court).

Municipal court judges, as do other judges, have the inherent authority to conduct their judicial functions and to amend their judicial processes, independent of the oversight and control of other branches of government, and to manage the conduct of court officials and all other persons connected with the judicial proceedings before the Court. *See* Ala. Code Sec. 12-1-7(4). That authority is very broad:

Every court shall have power:

(1) To preserve and enforce order in its immediate presence and as near thereto as is necessary to prevent interruption, disturbance or hindrance to its proceedings;

(2) To enforce order before a person or body empowered to conduct a judicial investigation under its authority;

(3) To compel obedience to its judgments, orders and process and to orders of a judge out of court, in an action or proceeding therein;

(4) **To control, in furtherance of justice, the conduct of its officers and all other persons connected with a judicial proceeding before it in every matter appertaining thereto;**

no authority to control." *Grech v. Clayton County, Ga.*, 335 F.3d 1326, 1331 (11th

Cir.2003) (quoting *Turquitt v. Jefferson County*, 137 F.3d 1285, 1292 (11th

Cir.1998)).  The City of Clanton does not have the power to control the Municipal

Court's actions. *See, e.g., Woodard  v. Town of Oakman*, 885 F.Supp.2d 1216

(N.D. Ala. 2012)(holding that, based on the statutory provisions governing

Alabama's municipal courts, there was nothing to indicate a municipality would

have control over a municipal court magistrate's unlawful issuance of an arrest

warrant); *Smedley v. City of Ozark*, Not Reported in F.Supp.2d, 2012 WL 512586,

at * 3 (M.D. Ala. Feb. 1, 2012)(holding that "**a city has no authority over a State**

---

(5) To administer oaths in an action or proceeding pending therein and in all other cases where it may be necessary in the exercise of its powers and duties; and

(6) To amend and control its process and orders so as to make them conformable to law and justice.

Ala. Code § 12-1-7.

There are very specific provisions in the Alabama Code for how the states' municipal courts should function. For instance, the Code provides that a municipal court may supervise personnel and essentially authorize them to handle certain judicial functions, such as handling traffic tickets or issuing arrest warrants. *See* Ala. Code Sec. 12-14-50.

The Alabama Supreme Court has the authority to prescribe procedures for appointment of magistrates to serve as chief officers of municipal court administrative agencies, and the state code limits the magistrates' authority. *See* Ala. Code Sec. 12-14-51. The Alabama Supreme Court provides rules of administration for such an agency. See Ala. Code Sec. 12-14-52.

The Alabama Rules of Judicial Administration govern the municipal courts and their operation. *See*, for instance, Ala. R. Jud. Admin. 19, which provides very specific instructions for the handling of uniform traffic tickets, and Ala. R. Jud Admin. 43, which provides very specific rules governing municipal court procedures generally.

Municipal court judges are governed by the Canon of Judicial Ethics, as are all state court judges in Alabama which requires that judges exercise independence. This further illustrates that a municipal court personnel and judges should not be governed by the executive or legislative branches of the municipality.

Canon 1 states that "[a] judge should uphold the integrity and independence of the judiciary." And Canon 1 further provides that "[a]n independent honorable judiciary is indispensable to justice in our society." In other words, municipal court judges must exercise independent judgment on all judicial matters and must not exercise their judicial functions pursuant to the orders of the municipality. To do so would undermine the judges' independence and the integrity of the municipal court system itself.

Canon 2A states that "A judge should … conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary." If municipal court judges were to make judicial decisions pursuant to the dictates of the municipality, the integrity and impartiality of the judiciary would be compromised.

**judicial officer**," such as a municipal judge).  "A municipality cannot be liable for judicial conduct it lacks the power to require, control, or remedy," which, again, arises specifically from the authority granted only to Municipal Courts.  *Doe 5 v. City of Haltom City*, 106 Fed. Appx. 906, 908 (5th Cir. 2004)(quoting *Eggar v. City of Livingston*, 40 F.3d 312, 316 (9th Cir. 1994)).  Because the City of Clanton has no control over the acts of those persons comprising the Clanton Municipal Court, all claims against it and brought pursuant to 42 U.S.C. § 1983 are due to be DISMISSED.

### Plaintiffs have Sued an Improper Defendant

Along the same lines that their claims brought under 42 U.S.C. § 1983 fail, so too is the Complaint due to be dismissed for failing to name the proper party as a defendant.  Again, the policies Plaintiffs seek to attack are not ones over which the City of Clanton has control.  The Clanton Municipal Court judge is the person charged by law with imposing sentences upon criminal defendants, and with making decisions about terms of probation.  *See* Ala. Code Sec. 12-14-13.  The City has no control over whether the Court imposes sentences upon criminal defendants or alters their terms of probation.

The municipal courts of the State of Alabama are courts of the unified judicial system of Alabama.  While municipalities can choose to fund a municipal court (as opposed to sending their cases to the local district court judges) and can

appoint judges, once that choice is made and those judges are appointed, the municipality and its officials have no control, nor should they have, over the actions of those judges.  Municipal judges must be independent.  They must follow state law and comply with state procedural and court administrative rules.  They fall under the auspices of State Administrative Office of Courts and are subject to the requirements set out in the Alabama Canons of Judicial Ethics. *See* note 2, *supra*.   In fact, it would be patently inappropriate for a city mayor or prosecutor, to have control of any kind over the nature of the Court's orders or the manner in which a municipal judge rules.

Furthermore, Alabama Code § 12-14-13 explicitly charges these independent municipal judges with authority to impose parole conditions upon conviction of a criminal defendant:

> (a) **Municipal courts** may suspend execution of sentence and place a defendant on probation for varying periods of time, not to exceed two years.

> (b) **The court** may require such investigations as may be deemed necessary and desirable to be made by a probation officer or such other suitable person or persons as the court may designate as to the circumstances of the offense and the criminal record, social history and present condition of the defendant.

> (c) **The court** may suspend the execution of sentence and continue the defendant under an existing bond or may require such additional bail as it deems necessary pending the disposition of the application for probation.

**(d) The court shall determine and may, at any time, modify the conditions of probation and may require the probationer to comply with the following or any other conditions**:

(1)     To avoid injurious or vicious habits;

(2)     To avoid persons or places of disreputable or harmful character;

(3)     **To report to the probation officer or other person designated by the judge**;

(4)     To permit the officer to visit him at his home or elsewhere;

(5)     To work faithfully at suitable employment as far as possible;

(6)     To remain within a specified area;

(7)     **To pay the fine and costs imposed or such portions thereof as the judge may determine and in such installments as the judge may direct**;

(8)     To make reparation or restitution to any aggrieved party for the damage or loss caused by his offense in an amount to be determined by the court; and

(9)     To attend defensive driving schools, alcohol countermeasure programs or courses where available and support his dependents to the best of his ability.

…

**(g) The period of probation or suspension of execution of sentence shall be determined by the court** and may exceed the length of the sentence, and such period may be extended a period of two years from date of sentencing.

…

(i) At any time during the period of probation or suspension of execution of sentence, **the court may issue a warrant and cause the defendant to be arrested for violating any of the conditions of probation or suspension of sentence.** Any probation officer with probable cause to believe a probationer has violated the conditions of probation may arrest such probationer without a warrant. In case of an arrest without a warrant, the probation officer shall prepare a written statement setting forth that the probationer has, in his judgment, violated the conditions of probation, and said statement shall be sufficient warrant for having probationers brought forthwith before the court for determination as to probable cause for the charge of

probation violation. **The court may order detention of the probationer pending further hearing, after which the court may revoke the probation or suspension of sentence and order and adjudge that the sentence be immediately executed**.

Ala. Code § 12-14-13.  Clearly, all of the procedures and decisions regarding the Plaintiffs' sentencing, parole conditions and payment plans fall within the exclusive powers of the Clanton Municipal Court, pursuant to Alabama law, *not* the City of Clanton.

> In order to recover a judgement against a local governmental entity under section 1983, [a plaintiff] must establish that he sustained a deprivation of his constitutional rights as a result of some official policy, practice, or custom of the governmental entity. *Monell v. Dept. of Social Servs. of the City of New York*, 436 U.S. 658, 694 (1978) [string cite omitted].  A local judge acting in his or her judicial capacity is ***not*** considered a local government official whose actions are attributable to the [entity].

*Krueger v. Reimer*, 66 F.3d 75, 77 (5th Cir. 1995)(emphasis added).  *See also Burns v. Mayes*, 369 Fed.Appx. 526, 530 (5th Cir. 2010); *Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir. 1992)(noting courts have repeatedly held "that a **municipal judge** acting in his or her judicial capacity to enforce state law **does not act** as a **municipal official or lawmaker**").  "It follows that as a matter of Alabama law, **a city has no authority over a State judicial officer**," such as a municipal judge, preventing the officer from being a policy maker of the city. *Smedley v. City of Ozark*, Not Reported in F.Supp.2d, 2012 WL 512586, at * 3 (M.D. Ala. Feb. 1, 2012)(citing *Ex parte Ala. State Personnel Bd.*, 54 So.3d 886, 894 (Ala. 2010).

Of course, the Plaintiff's rationale for suing the City of Clanton is abundantly clear: in addition to the obstacles presented by the issue of judicial immunity, discussed *infra.*, it would be contrary to the dictates of § 1983 for this Court to enter an injunction against the Clanton Municipal Court or the judge himself.  Section 1983 precludes this Court from entering an injunction against a judicial officer acting in his judicial capacity. 42 U.S.C. § 1983 ("in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable").[4]

Because the proper party is not before the Court and because the relief sought – control over the discretion of the Clanton Municipal Judge is not available to the City – the Plaintiffs' claims against the City of Clanton are due to be DISMISSED.

### The Complaint Fails to Meet *Iqbal/Twombley* Pleading Standards

Considering that the Plaintiffs have failed to allege any facts demonstrating that a policy or custom of the City of Clanton caused their claimed harm, the Complaint in this case is due to be dismissed.  Dismissal of the Complaint would be proper because it fails to meet the "plausibility" pleading standard announced by the *Iqbal/Twombley* doctrine.  "To survive dismissal, the complaint's

---

[4] It must be noted, though, that the Plaintiffs' inability to bring § 1983 claims against the Clanton Municipal Court judge would not leave them without alternate sources of relief, *e.g.* appeals to the Circuit Court and the Court of Criminal Appeals or petitions for writs directed at the Clanton Municipal Court.

allegations must *plausibly* suggest that the [plaintiff] has a right to relief, raising the possibility above the speculative level; if they do not, the plaintiff's complaint should be dismissed" *James River Ins., Co. v. Ground Down Eng'g, Inc.*, 540 F.3d 1270, 1274 (11th Cir. 2008)(emphasis added)(citing *Bell Atl. Corp. v. Twombley*, 550 U.S. 544, 555-56 (2007)).  "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). When considering a motion to dismiss, a district court:

> [S]hall begin by identifying conclusory allegations that are not entitled to an assumption of truth – legal conclusions must be supported by factual allegations.  The district court should assume, on a case-by-case basis, that well pleaded factual allegations are true, and then determine whether they *plausibly give rise to an entitlement to relief.*

*Randall v. Scott*, 610 F.3d 701, 709-10 (11th Cir. 2010)(emphasis added).

Furthermore, the plausibility standard "necessarily requires that a plaintiff include factual allegations for each essential element of his or her claim." *GeorgiaCarry.org, Inc. v. Georgia*, 687 F.3d 1244, 1254 (11th Cir. 2012).

When the plaintiffs' Amended Complaint herein is measured against the *Twombley-Iqbal* pleading standard and the rule of *Monell* and its progeny regarding § 1983 municipal liability, it is clear that the plaintiffs have failed to allege any plausible claims upon which relief can be granted against the City of Clanton.  Indeed, void from the Complaint are any factual allegations showing that Clanton itself caused the constitutional violation(s) at issue. The plaintiffs have

14

also failed to allege any facts showing that Clanton has or had a custom or policy that constituted deliberate indifference to their guaranteed rights, or that any such policy or custom actually caused the alleged violation of their constitutional rights. There is similarly no factual allegation of any officially promulgated policy of Clanton, or any identification of any unofficial custom or practice through repeated acts of the final policymaker of Clanton, which caused the alleged violation of the Plaintiffs' rights. Simply put, the Plaintiffs' Complaint fails to allege any factual basis at all for the City of Clanton, as a municipality, being liable for any of the Plaintiffs' alleged claims.

## Judicial Immunity Extends to the City of Clanton[5]

To the degree that had the Plaintiffs bought this lawsuit against the proper party or parties, the City of Clanton would be afforded judicial immunity for the conduct of the agents, officers and employees of the Clanton Municipal Court who were performing judicial functions. "Judicial immunity arose because it was in the public interest to have judges who were at liberty to exercise their independent judgment about the merits of a case without fear of being mulcted for damages

---

[5] The necessity of addressing the implications of judicial immunity as it relates to the City of Clanton only arises should this Court find that the procedures, actions and decisions of the judicial officers of the Clanton Municipal Court could be considered those of an official policy maker of the City of Clanton such that the judicial officers' actions would subject the City to liability under § 1983.  As discussed at length, *supra.*, those judicial officers are under the authority and control of the Alabama Supreme Court, the Alabama Code, and that Alabama constitution, and cannot therefore be considered policy makers for the City of Clanton. *See also Krueger v. Reimer*, 66 F.3d 75, 77 (5th Cir. 1995)(holding that "[i]n order to recover a judgement against a local government entity under section 1983, [the plaintiff] must establish that he sustained a deprivation of his constitutional rights as a result of some official policy, practice, or custom of the governmental entity, [and a] **local judge acting in his or her capacity is not considered a local government official whose actions are attributable to the [entity]**").

should an unsatisfied litigant be able to convince another tribunal that the judge acted not only mistakenly but with malice and corruption." *Dennis v. Sparks*, 449 U.S. 24, 31 (1980).  In a § 1983 action, a judge is entitled to absolute judicial immunity from damages for those acts taken while he was acting in his judicial capacity unless he acts in the "'clear absence of all jurisdiction.'" *Stump v. Sparkman*, 435 U.S. 349, 357 (1978)(citations omitted); *Simmons v. Conger*, 86 F.3d 1080, 1084-85 (11th Cir. 1996).  Furthermore, those actions taken by judicial officers of the Clanton Municipal Court, which encompass all of the Plaintiffs' claims in this case, would not serve as policies for which the City of Clanton could be liable under § 1983. *See Mayes*, *supra.*, 369 Fed.Appx. at 530.

This judicial immunity extends not just to the Clanton Municipal Court judge, but also to the Court's magistrates.  Magistrates are accorded the same immunity as judges. *Scott v. Dixon*, 720 F.2d 1542, 1546 (11th Cir. 1983), *cert. denied*, 496 U.S. 832 (1984).  Where a clerk of court is performing a duty that requires the exercise of judgment and discretion in its performance, it is considered a judicial act entitling the clerk or magistrate to judicial immunity.  To the extent the plaintiff alleges misconduct based upon the acts of the Clanton Municipal Court's judge and/or magistrate, the City of Clanton is entitled to the same immunity enjoyed by them. *Ex parte City of Greensboro*, 948 So.2d 540, 543-44

(Ala. 2006)(holding that the City of Greensboro cannot be held liable for those acts of a judicial officer entitled to immunity).

Likewise, absolute judicial immunity is recognized in Alabama and bars causes of actions against municipalities, municipal judges, clerks and magistrates. *See Ex parte City of Greensboro*, *supra.*; *Gore v. City of Hoover*, 559 So. 2d 163 (Ala. 1990); *Bahakel v. Tate*, 505 So. 2d 837 (Ala. 1987). The Plaintiffs have alleged a various violations of constitutional provisions, but the alleged violations could only conceivably have been derived from official actions taken by the municipal judge or magistrate, who are immune. The crux of the entire Complaint against Clanton is based upon alleged actions of the Clanton Municipal Court regarding sentencing and probation practices. As discussed, *supra.*, the City of Clanton has no supervision or control over the actions, decisions or practices of *any* court in the state of Alabama.

Therefore, the City of Clanton is immune from any causes of action against it based upon the actions of the Clanton Municipal Court judge or magistrate, and all claims in this case are due to be DISMISSED.

### Count Four of the Plaintiffs' Complaint Fails to State a Cognizable Claim for Relief

Dismissal of the claims stated in a complaint are warranted where, as here, there are dispositive legal issues which preclude relief. *See, e.g., Neitzke v. Williams*, 490 U.S. 319, 326 (1989); *Brown v. Crawford County, Ga.*, 960 F.2d

17

1002, 1009-10 (11th Cir. 1992).  Count Four of the Plaintiffs' Complaint states that "Defendant's use of a private probation company violates the Plaintiffs' Due Process rights." [Doc. 1, p. 15].   However, municipalities in Alabama are specifically authorized by statute to provide for probation services. Ala. Code § 12-14-2(a)("The municipality **shall provide** appropriate facilities and **necessary supportive personnel for the municipal court** and may provide for **probation services**, clerks and municipal employees designated as magistrates").  "The power to contract with a *private firm* to aid in the collection of delinquent municipal court fines can and must be 'necessarily implied' from the power granted to cities and the obligation imposed on cities in § 12–14–2(a) to adequately support their municipal courts." *Wilkins v. Dan Haggerty & Ass.*, 672 So.2d 507, 510 (Ala. 1995)(emphasis added); *see also* Atty. Gen. Opinion No. 98-00043 (William H. Pryor, Jr.)(recognizing authority of municipalities to contract with private probation companies).

The Plaintiffs' have alleged that the City's contract with a private probation company[6] violates the Due Process Clause of the Fourteenth Amendment. However, they provide no facts upon which they can support their claims that contracting with a private probation company violates the Fourteenth Amendment or any other constitutional provision.  Despite their obligation to do so, the

_____

[6] The City of Clanton has a contract with Judicial Correction Services, Inc. ("JCS") for the purpose of monitoring criminal defendants convicted of the charges against them during specified probationary periods.  The Plaintiffs, though, have not elected to sue JCS in this case, despite that many allegations in the Complaint are directed at JCS.

Plaintiffs have alleged no facts indicating whether the supposed violations were for procedural or substantive due process.  Even were the Plaintiffs to have pled with requisite particularity facts which support any of their claims in this case, counsel for the City of Clanton has found no case law which supports the proposition that contracting with a private probation company *per se* violates provisions of the U.S. Constitution.  Additionally, the Plaintiffs have failed to allege what supposed aspect of the Due Process Clause was violated through the City's contract with a private probation service, or how doing so resulted in harm to them.  Therefore, this claim is due to be DISMISSED.

### Count Five Fails to State a Claim upon which Relief can be Granted

Count Five alleges that "Defendant's use of jail and threats of jail to collect [fines and costs levied against convicted criminal defendants by] the City violates Equal Protection."  There is not a single allegation anywhere in the complaint, whether ambiguously, vaguely, non-specifically or unartfully pled, that supports such a contention against the City of Clanton.  All such allegations in the Complaint, despite failing to plausibly state a cause of action, have been made against Judicial Correction Services, *not* the City of Clanton.  Additionally, the Plaintiffs accuse the Chilton County District Attorney's Office of "threatening imminent arrest if [the convicted persons] do not pay their [fines and costs levied against them]."  Quite obviously the Plaintiffs' allegations regarding this Count

have not been directed at the City, but rather other entities, therefore failing to state a claim upon which relief can be granted as against the City of Clanton, and they should be DISMISSED.

### Claims for Violations of the
### Equal Protection Clause are Due to be Dismissed

In addition to failing to bring proper and/or cognizable claims against the City of Clanton, the Plaintiffs' claims are also due to be dismissed for failing to state a claim upon which relief can be granted for supposed violations of the Equal Protection Clause. "To establish an equal protection violation, a plaintiff must show that the state treated him [or her] disparately from other similarly situated persons and that the disparate treatment burdens a fundamental right or is based upon membership in a suspect class." *Williams v. Jefferson County, Ala.*, 482 Fed.Appx. 480, 482 (11th Cir. 2012)(citing *DeYoung v. Owens*, 646 F.3d 1319, 1327 (11th Cir. 2011). The Plaintiffs' have alleged no factual basis for their claims that they were treated disparately; if a plaintiff fails to make a showing that he was treated differently than those similarly situated, he does not have a viable Equal Protection claim. *Id.*

All claims for Equal Protection violations are also due to be dismissed because the Plaintiffs have failed to state facts showing they are members of a protected class. While the Plaintiffs have alleged that they could not pay the fines and costs associated with their criminal convictions, indigent persons, on that

single basis, have <u>never</u> been held to be members of a suspect class. *Harris v. McRae*, 448 U.S. 297, 323 (1980) (noting that poverty is not a suspect classification); *Riviera v. Allen*, 144 F.3d 719, 727 (11th Cir. 1998)("indigents [not] suspect class"); *Driggers v. Cruz*, 740 F.3d 333, 337 (5th Cir. 2014)(holding that "**an individual's indigence does not make that individual a member of a suspect class for equal protection purposes**"); *Abdul-Akbar v. McKelvie*, 239 F.3d 307, 317 (3rd Cir. 2001)(" Neither prisoners nor indigents are suspect classes"); *Murray v. Dosal*, 150 F.3d 814, 818 (8th Cir. 1998)(stating that "[n]either prisoners nor indigents constitute a suspect class").

Furthermore, classifications based upon income are subject only to rational basis review. *See San Antonio Independent Sch. Dist. v. Rodriguez*, 411 U.S. 1, 28-9 (1973).  The City of Clanton, on the other hand, has a compelling governmental interest in enforcing the laws of the state of Alabama within its jurisdiction. *Padget v. Donald*, 401 F.3d 1273, 1282 (11th Cir. 2005)(acknowledging compelling interest in promoting law enforcement).  Having failed to show that the Plaintiffs' claims are subject to Equal Protection analysis, they are due to be DISMISSED.

### Claims for Violations of the
### Due Process Clause are Due to be Dismissed

The Due Process Clause of the Fourteenth Amendment provides: "nor shall any State deprive any person of life, liberty, or property, without due process of law."  The Due Process Clause has been interpreted to have two components:

21

procedural due process and substantive due process.  Procedural due process

ensures that the when government action deprives a person of life, liberty or

property, it is done so in a fair manner. *See Mathews v. Eldridge*, 424 U.S. 319,

335 (1976).  Substantive due process prevents the government from infringing on

"certain 'fundamental' liberty interests … unless the infringement is narrowly

tailored to serve a compelling state interest," *Reno v. Flores*, 507 U.S. 292, 302

(1993).

Substantive due process analysis must "begin with a careful description of

the asserted right, for '[t]he doctrine of judicial self-restraint requires us to exercise

the utmost care whenever we are asked to break new ground in this field.'" *Reno*,

*supra.*, 507 U.S. at 302 (quoting *Collins v. Harker Heights*, 503 U.S. 115, 125

(1992)).  The Plaintiffs have not alleged what specific fundamental right was

infringed by the claimed conduct of the City of Clanton, nor have they alleged with

any specificity how the City did so.  Thus, any claims based upon substantive due

process are due to be dismissed.

Neither have the Plaintiffs alleged with any specificity facts that would

support claims for procedural due process violations.  Regardless, they were

afforded "means of redress for [*supposed*] property deprivations satisfy[ing] the

requirements of procedural due process" under the law of Alabama. *Parratt v.

Taylor*, 451 U.S. 527, 537 (1981).  The Alabama Supreme Court has enacted such

means by allowing them to appeal their convictions and adjudications to the Circuit Court of Chilton County.

> A defendant convicted of an offense in a municipal court or a district court shall have the right to appeal the judgment, within fourteen (14) days of the date of the judgment or the denial of a timely filed post judgment motion, to the circuit court for a trial de novo.

Ala. R. Crim. P. 30(a).  "[P]rocedural due process violations do not even exist unless no adequate state remedies are available." *Cotton v. Jackson*, 216 F.3d 1328, 1331 n. 2 (11th Cir. 2000).  Clearly, the Plaintiffs' right to appeal the decisions of the Clanton Municipal Court is an adequate state remedy.

However, the plaintiffs chose not to avail themselves of their rights of criminal appeals under the rules and procedures promulgated by the Alabama Supreme Court for use by litigants in *all* Alabama Courts.  Instead, the plaintiffs have chosen to file a civil lawsuit against the City of Clanton, which, as previously discussed, has no judicial authority, and has no supervision or control over the Clanton Municipal Court.  Therefore, the plaintiffs have not stated allegations which support cognizable Due Process claims against the City of Clanton for actions of officials of Alabama's Unified Judicial System, and all claims for supposed violations of the Due Process Clause should be DISMISSED.

### All Claims for Punitive Damages are Due to be Dismissed

The Plaintiffs' Complaint requests punitive damages, but no such relief is available. *See* [Doc. 1, p. 17].  As stated in *Shaw v. Coosa County Comm., et al.*,

330 F. Supp. 2d 128 (M.D. Ala. 2004), "... it is well settled that local government entities are immune from punitive damages in an action brought pursuant to 42 U.S.C. § 1983. *See e.g.*, *City of New Port v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981)." Additionally, the Plaintiffs' claims for punitive damages under state law causes of action (if they have alleged any at all) are also due to be dismissed as legislation forbids an award of punitive damages against a municipality under Ala. Code § 6-11-26 (2011). Accordingly, any such punitive damages claims made by the plaintiffs against the City of Clanton are due to be DISMISSED.

### Any Claims Brought under the Law of Alabama<br>Are Due to be Dismissed

Under state law, the City of Clanton can only be held liable for the acts of its agents, servants and employees under a theory of *respondeat superior*. Ala. Code § 11-47-190. (Please note: the only theory of municipal liability under Alabama law is completely opposite from that of 42 U.S.C § 1983). Accordingly, any liability imposed upon Clanton is derived from the acts of its agents over which it has control. Because the plaintiffs have not pled any employees of the City of Clanton as plaintiffs, the state law claims alleged against it are also due to be dismissed because there is no remaining individual liability against agents, servants or employees of Clanton. *See generally, Stephens v. City of Butler, Ala.*, 509 F. Supp. 2d 1098 (S.D. Ala. 2007); *Alfa Life Ins. Corp. v. Jackson*, 906 So. 2d 143, 154 (Ala. 2005).

It is clear that the plaintiffs' Amended Complaint is void of any *Twombley* sufficient factual allegations showing any of the required elements of their claims under Alabama law.  Accordingly, and if even made, the Plaintiffs' claims under state law fail to state any cognizable claim upon which relief may be granted, and are due to be DISMISSED.

## Statute of Limitations

The Plaintiffs' Complaint lacks specific dates for the alleged occurrences giving rise to their alleged claims.  However, the allegations of 42 U.S.C. § 1983 violations occurring beyond the two year statute of limitations are due to be dismissed. *See, Owens v. Okure*, 488 U.S. 235, 246 n.9 (1989); *Jones v. Preuit & Mauldin*, 876 F.2d 1480 (11th Cir. 1989).  Therefore, any claims regarding occurrences falling outside the two year limitations period are due to be DISMISED.  The City of Clanton also alleges a failure of statutory notice under the provisions of §§ 11-47-23 and 11-47-192, Code of Alabama (1975), with respect to any and all state law claims, if even pled, wherein the Plaintiffs did not file notices of claim with the City within the requisite 6 month time period.

## Conclusion

WHEREFORE, the foregoing premises considered, the Defendant City of Clanton would respectfully ask this Court to GRANT its Motion to Dismiss the

Complaint in this case, and for any further relief deemed appropriate under the circumstances.

Respectfully submitted,

s/ R. Warren Kinney
James W. Porter, II
R. Warren Kinney
*Attorneys for City of Clanton*

**Porter, Porter & Hassinger, P.C.**
P.O. Box 128
Birmingham, Alabama  35201-0128
(205) 322-1744
jwporterii@pphlaw.net,
wkinney@pphlaw.net

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has been ***electronically filed*** with the Clerk of the Court using the CM/ECF system which will send notification of such filing upon the following, this the 18th day of March, 2015. If Notice of Electronic Filing indicates that Notice should be delivered by other means to any of the following, I certify that a copy will be sent via U.S. Mail, properly addressed, postage prepaid.

Matthew Swerdlin, Esq.
1736 Oxmoor Road #101
Birmingham, AL 35209

J. Mitch McGuire, Esq.
**McGuire & Associates, LLC**
31 Clayton Street
Montgomery, AL 36104

William M. Dawson, Esq.
**Dawson Law Office**
2229 Morris Avenue
Birmingham, AL 35203

s/ R. Warren Kinney
OF COUNSEL