IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| CANDICE CHAPMAN, MICHAEL LITTLEFIELD, STEDMAN KLINE, DEANGELO BARNETT, and TRACY DUBOSE, individually, and on behalf of a class of all others similarly situated, | ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No.  2:15-cv-0125-RCL |
| THE CITY OF CLANTON; JUDICIAL CORRECTION SERVICES, LLC; CHC COMPANIES, INC.; and CORRECT CARE SOLUTIONS, LLC, | ) ) ) ) ) | |
| Defendants. | ) | |

---

## DEFENDANT JUDICIAL CORRECTION SERVICES, LLC'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS (DOC. 86)

---

Larry S. Logsdon
Michael L. Jackson
Wesley K. Winborn
Wallace, Jordan, Ratliff  & Brandt, LLC
P.O. Box 530910
Birmingham, Alabama  35253
Voice: (205) 870-0555

Wilson F. Green
Fleenor & Green LLP
1657 McFarland Blvd. N.
Suite G2A
Tuscaloosa, Alabama  35406
Voice:  (205) 722-1018

*Attorneys for Defendants Judicial Correction Services, LLC*

# Table of Contents

Table of Authorities. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

I.   Plaintiffs Do Not Plead Facts Demonstrating Causation and Other Necessary Elements of Their Purported § 1983 Claims.. . . . 2

    A.   Plaintiffs have not stated a claim for denial of due process by JCS... . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    B.   Plaintiffs have not stated a claim for violation of their Fourth Amendment rights.. . . . . . . . . . . . . . . . . . . . . . . . . . 9

    C.   Plaintiffs fail to state a claim for a Sixth Amendment violation.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

    D.   Plaintiffs fail to state a claim for violation of the Eighth Amendment... . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

    E.   Plaintiffs fail to state an equal-protection claim... . . . . . . . . . 19

II.   The Declaratory and Injunctive Relief Requested is Moot as to JCS.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

III.   The Statute of Limitations Bars Plaintiffs' Claims.. . . . . . . . . . . . 22

IV.   JCS Is Entitled to Quasi-Judicial Immunity.. . . . . . . . . . . . . . . . 24

V.   Plaintiffs' Complaint Is Due To Be Dismissed Because This Court Lacks Subject-Matter Jurisdiction over This Case Under the *Rooker-Feldman* Doctrine and Because It Is an Improper Collateral Attack on Judgments in Criminal Cases... . . . . . . . . . . 27

VI.   JCS Is Entitled to Qualified Immunity... . . . . . . . . . . . . . . . . . . 30

Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

Certificate of Service.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

## Table of Authorities

**Cases**                                                         **Page**

*Adler v. Duval County Sch. Bd.,*
112 F.3d 1475 (11th Cir. 1997)........................................ 21

*Alabama v. Shelton,*
535 U.S. 654 (2002)..................................................... 12

*Allaben v. Howanitz,*
579 F. App'x 716 (11th Cir. 2014). ........................... 13, 14

*Anderson v. Romero,*
72 F.3d 518 (7th Cir.1995). ............................................ 1

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)..................................................... 11

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 544, 127 S. Ct. 1955 (2007). .......................... 14

*Bonner v. City of Prichard,*
661 F.2d 1206 (11th Cir. 1981).......................................... 3

*Brower v. Cnty. of Inyo,*
489 U.S. 593 (1989)..................................................... 11

*Brown v. Crawford Cnty.,*
960 F.2d 1002 (11th Cir. 1992)....................................... 15

*Bus. Realty Inv. Co., Inc. v. Insituform Techs., Inc.,*
564 F. App'x 954 (11th Cir. 2014). ................................. 5

*Butz v. Economou,*
438 U.S. 478, 98 S. Ct. 2894 (1978). ............................ 24

*Camreta v. Greene,*
131 S. Ct. 2020. ......................................................... 1

*Carr v. Tatangelo,*
338 F.3d 1259 (11th Cir. 2003)....................................... 11

*Citizenship Trust v. Keddie-Hill,*
  68 So. 3d 99 (Ala. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Collins v. City of Harker Heights,*
  503 U.S. 115 (1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Corsini v. Nast,*
  613 F. App'x 1 (2d Cir. 2015). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Cotton v. Jackson,*
  216 F.3d 1328 (11th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Cox v. Stanton,*
  529 F.2d 47 (4th Cir. 1975). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Cuesta v. Sch. Bd. of Miami-Dade Cnty.,*
  285 F.3d 962 (11th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Delany v. District of Columbia,*
  659 F. Supp. 2d 185 (D. D.C. 2009). . . . . . . . . . . . . . . . . . . . . . . . 16, 25

*District of Columbia Court of Appeals v. Feldman,*
  460 U.S. 462 (1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27, 28, 29, 32

*Doyle v. Camelot Care Ctrs., Inc.,*
  305 F.3d 603 (7th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Dunaway v. New York,*
  442 U.S. 200 (1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*E & T Realty v. Strickland,*
  830 F.2d 1107 (11th Cir. 1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Ex parte Ellis,*
  502 So. 2d 694 (Ala. 1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

*Filarsky v. Delia,*
  132 S. Ct. 1657 (2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Fleming v. Dowdell,*
  434 F. Supp. 2d 1138 (M.D. Ala. 2005),
  aff'd 182 F. App'x 946 (11th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . 26

*Focus on the Family v. Pinellas Suncoast Transit Auth.,*
    344 F.3d 1263 (11th Cir. 2003)................................. 5, 9, 21

*Galvan v. Garmon,*
    710 F.2d 214 (5th Cir. 1983)................................. 25, 26

*Goldschmidt v. Patchett,*
    686 F.2d 582 (7th Cir. 1982)..................................... 13

*Goodman v. Sipos,*
    259 F.3d 1327 (11th Cir. 2002)............................... 28, 29

*Goodridge v. Siemens Energy, Inc.,*
    276 F.R.D. 540 (N.D. Ala. 2011).................................. 15

*Hale v. City of Lanett,*
    No. 3:12CV584-TFM, 2012 WL 3890132 (M.D. Ala. 2012).......... 19

*Hughes v. Chesser,*
    731 F.2d 1489 (11th Cir. 1984)................................... 26

*Johnson v. Bd. of Regents,*
    263 F.3d 1234 (11th Cir. 2001)................................... 21

*Koziara v. City of Casselberry,*
    F.3d 1302, 1305 (11th Cir. 2004). ............................... 21

*Lavellee v. Listi,*
    611 F.2d 1129 (5th Cir. 1980).................................... 23

*Malowney v. Federal Collection Deposit Group,*
    193 F.3d 1342 (11th Cir. 1999)................................... 20

*McCall v. Crosthwait,*
    590 F. Supp. 2d 1337 (M.D. Ala. 2008). ........................... 2

*Mencer v. Hammonds,*
    134 F.3d 1066 (11th Cir. 1998)................................... 19

*Nat'l Parks Conservation Ass'n v. Norton,*
    324 F.3d 1229 (11th Cir. 2003)................................... 21

*Parks v. City of Warner Robins,*
  43 F.3d 609 (11th Cir. 1995).................................... 19

*Powers v. Hamilton Cnty. Public Defendant Comm'n,*
  501 F.3d 592 (6th Cir. 2007)............................... 2, 27

*Rademaker v. E.D. Flynn Exp. Co.,*
  17 F.2d 15 (5th Cir. 1927)..................................... 22

*Rayburn ex rel. Rayburn v. Hogue,*
  241 F.3d 1341 (11th Cir. 2001)................................. 5

*Rheuark v. Shaw,*
  628 F.2d 297 (5th Cir. 1980).................................... 2

*Richardson v. McKnight,*
  521 U.S. 399 (1997).......................................... 30

*Roland v. Phillips,*
  19 F.3d 552 (11th Cir. 1994)................................... 26

*Rooker v. Fidelity Trust Co.,*
  263 U.S. 413 (1923)................................. 27, 28, 29, 32

*Sales v. Murray,*
  862 F. Supp. 1511 (W.D. Va. 1994). ........................... 14

*Schwartz v. Town of Plainville,*
  483 F. Supp. 2d 192 (D. Conn. 2007)......................... 4, 10

*Sindram v. Suda,*
  986 F.2d 1459 (D.C. Cir. 1993)................................. 25

*Smart v. Good,*
  441 F. Supp. 2d 631 (S.D. N.Y. 2006).......................... 4, 10

*Smedley v. City of Ozark,*
  No. 1:12-cv-116-WKW,
  2012 WL 1711295 (M.D. Ala. Mar. 9, 2012). ...................... 6

*Smith v. City of Oak Hill,*
  587 F. App'x 524 (11th Cir. 2014). ............................. 3

*Spaulding v. Nielsen,*
   599 F.2d 728 (5th Cir. 1979)................................25, 26

*State v. Adams,*
   91 So. 3d 724 (Ala. Crim. App. 2010)...........................17

*Stein v. Janos,*
   269 F. Supp. 2d 256 (S.D.N.Y. 2003)........................13, 14

*Stump v. Sparkman,*
   435 U.S. 349 (1978)...........................................26

*Swanson v. Pitt,*
   330 F. Supp. 2d 1269 (M.D. Ala. 2004)..........................20

*Theis v. Smith,*
   676 F. Supp. 874 (N.D. Ill. 1988)..............................14

*Townes v. City of New York,*
   76 F.3d 138 (2d Cir. 1999)......................................3

*Tucker v. City of Montgomery Bd. of Comm'rs,*
   410 F. Supp. 494 (M.D. Ala. 1976)..............................25

*U.S. v. Rosquete,*
   199 F. App'x 728 (11th Cir. 2005)...............................8

*Valdes v. Crosby,*
   390 F. Supp. 2d 1084 (M.D. Fla. 2005).......................4, 10

*Village of Arlington Heights v. Metro. Housing Dev. Corp.,*
   429 U.S. 252 (1977)...........................................19

**Statutes, Rules, and Constitutional Provisions**                    **Page**

Ala. Const. Art. IV § 89.......................................18

42 U.S.C. § 1983.................................2-4, 6, 9, 23, 28

Ala. Code § 12-14-2(a).........................................18

Fed. R. Crim. P. 32(f). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Fed. R. Crim. P. 32(i). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

**Other Authorities**                                                          **Page**

18 J. Moore et al., *Moore's Federal Practice* § 134.02[1][d] (3d ed. 2011). . . . . 1

Defendant Judicial Correction Services, LLC (JCS) submits this reply brief in support of its motion to dismiss (Doc. 86) and in reply to the Plaintiffs' opposition to that motion (Doc. 91).[1]

As a preliminary matter, the Plaintiffs direct the Court to Judge David Proctor's decisions in *Ray v. Judicial Corrections Services, Inc.*, No. 2:12-cv-02819-RDP, 2013 WL 5428360 and 2013 WL 5428395 (N.D. Ala. 2013), and also refer to that case periodically throughout their response brief. Certainly this Court should consider that case, as it should consider any case cited by the parties or addressing the same issues. But the *Ray* case is not binding in this present case and should receive no more weight than any other federal district court case. *See Camreta v. Greene*, 131 S. Ct. 2020, 2033 n. 7 (2011) ("'A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case.'" (quoting 18 J. Moore et al., *Moore's Federal Practice* § 134.02[1][d], pp. 134–26 (3d ed. 2011))); *Anderson v. Romero*, 72 F.3d 518, 525 (7th Cir.1995) ("[federal district court decisions] cannot clearly establish the law because, while they bind the parties by virtue of the doctrine of res judicata, they are not authoritative as precedent and therefore do not establish

---

[1] Plaintiffs' response in opposition to JCS's motion to dismiss (Doc. 91) is titled, "Plaintiff's Response in Opposition to Judicial Correction Services' & Correctional Healthcare Companies, Inc.'s Motion to Dismiss." But Correctional Healthcare Companies, Inc. is not a defendant in this lawsuit. Nor was JCS's motion to dismiss (Doc. 86) filed on behalf of any entity other than JCS.

the duties of nonparties"). This Court must independently analyze the law and pleadings before it and reach its own conclusion.

## I.    Plaintiffs Do Not Plead Facts Demonstrating Causation and Other Necessary Elements of Their Purported § 1983 Claims.

In general, municipal liability under § 1983 requires analysis of two prongs: whether the harm was *caused* by a constitutional violation, and whether that violation was *caused* by the defendants acting under color of state law. *See Collins v. City of Harker Heights*, 503 U.S. 115, 120 (1992). An official policy or custom must be the "moving force" of a constitutional violation under § 1983, which requires the plaintiff to show a *direct causal link* from the alleged actions to the deprivation of his rights. *See Cuesta v. Sch. Bd. of Miami-Dade Cnty.*, 285 F.3d 962, 967 (11th Cir. 2002); *see also McCall v. Crosthwait*, 590 F. Supp. 2d 1337, 1348 (M.D. Ala. 2008). The concepts of traditional tort causation inform the § 1983 causation inquiry. *See Powers v. Hamilton Cnty. Public Defendant Comm'n*, 501 F.3d 592, 608 (6th Cir. 2007). Thus, even if a person's actions are the "but-for" cause of a deprivation of someone's constitutional rights, that person's actions must also be the proximate cause. *Id.*

Eleventh Circuit precedent utilizes this proximate-cause analysis. In *Rheuark v. Shaw*, 628 F.2d 297 (5th Cir. 1980), the court held that actions of county commissioners were not the proximate cause of an "unconscionable delay in the preparation of [indigent defendants' appellate] statements of facts." *Id.* at

305-06.[2] Although the commissioners were charged with paying court reporters' salaries and fees for preparing statements of facts for indigents, because the judge bore the ultimate responsibility of those delays and because he possessed "absolute authority to appoint an unlimited number of substitute court reporters as need requires," the county commissioners were not the proximate cause of his decision to not utilize this power. *Id.* Thus, judicial discretion was an intervening force to cause any due process violations under § 1983.

Also following these principles, "the Second Circuit held that victims of unreasonable searches or seizures could not recover [against police officers and the City] for injuries resulting 'from the discovery of incriminating evidence and consequent criminal prosecution.'" *Smith v. City of Oak Hill*, 587 F. App'x 524, 527 n. 1 (11th Cir. 2014) (citing *Townes v. City of New York*, 176 F.3d 138, 148 (2d Cir. 1999)). The Second Circuit reasoned that the trial court's decision to not suppress the evidence constituted a superseding cause of the defendant's conviction and imprisonment. *See id.* Likewise, the decisions of the Clanton Municipal Court were a superseding cause to any of the actions of JCS in this case. While JCS maintains that none of its actions constituted constitutional violations, even if there were such violations, the ultimate authority to make determinations as to sentencing, probation, and incarceration rested with the municipal court. Therefore, Plaintiffs have stated no claims under § 1983 against

---

[2] Decisions of the Fifth Circuit through September 30, 1981, are binding precedent for the Eleventh Circuit. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981).

JCS because the acts pleaded by Plaintiffs do not plausibly show JCS was the proximate cause of any alleged constitutional violations.

Other cases reinforce that an entity which has no authority to correct or remedy a constitutional violation is not liable under § 1983. For example, in *Smart v. Good*, 441 F. Supp. 2d 631, 644 (S.D. N.Y. 2006), the court noted that a superintendent who merely files a report but has no authority to order an inmate's confinement is not liable for that confinement under § 1983. Similarly, in *Schwartz v. Town of Plainville*, 483 F. Supp. 2d 192, 196 (D. Conn. 2007), the court found that EMTs who were not in control and could not have ordered police officers to stop what they were doing were not liable for the officer's violations under § 1983. And in *Valdes v. Crosby*, 390 F. Supp. 2d 1084, 1105 (M.D. Fla. 2005), the court found no triable issue under § 1983 where a prison inspector, who investigated incidents of abuse and reported them to others, had no authority to prevent or correct the constitutional violations. Like these situations, JCS had a duty to report noncompliance of probation terms to the municipal court; but JCS had no authority or ability to order any form of discipline, whether fines or imprisonment, or to make any determinations, such as indigency or willfulness—and no facts establishing such authority have been plausibly alleged. Thus, JCS cannot be liable for the alleged § 1983 violations claimed by Plaintiffs.

### A. Plaintiffs have not stated a claim for denial of due process by JCS.

The majority of Plaintiffs' response to the due-process claims simply restates the allegations made in the Second Amended Complaint (referred to herein as simply the "Complaint"). Plaintiffs reinforce their allegations that the actions of "JCS and the City were joint and inextricably interwoven." (Doc. 91, at 2 (citing Doc. 74, ¶ 242).)[3] However, this reference to joint participation demonstrates no wrongdoing on the part of JCS; instead, it is one of the tests used to show that a private entity is a state actor. *See Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1277 (11th Cir. 2003) ("Previously, this circuit set forth the three primary tests the Supreme Court has used to determine whether state action exists: (1) the public function test; (2) the state compulsion test; and (3) the **nexus/joint action test**.") (citation omitted) (emphasis added). To satisfy the nexus/joint action test, "the governmental body and private party must be intertwined in a 'symbiotic relationship.'" *Rayburn ex rel. Rayburn v. Hogue*, 241 F.3d 1341, 1348 (11th Cir. 2001) (citations omitted).

"A private party does not become a state actor simply because it contracts with the government." *Bus. Realty Inv. Co., Inc. v. Insituform Techs., Inc.*, 564 F. App'x 954, 956 (11th Cir. 2014). In *Insituform Technologies*, the court found that a subcontractor's contract with Jefferson County did not make the

---

[3] References herein to page numbers of filings with this Court referred to by document number (e.g., Doc. ##) are to the original pagination at the bottom of the page, not to the pagination added by the Court's CM/ECF system, unless otherwise noted.

subcontractor a state actor for purposes of § 1983. *Id.* at 957. The court found the contract resulted from an arms-length transaction and that Jefferson County contracted with the subcontractor to comply with a mandate to rehabilitate its sanitary sewer system. *Id.* Similarly, the City of Clanton contracted with JCS as a result of an arms-length transaction, and the contract was to facilitate Clanton's provision of probation services. Therefore, JCS's acts in simply following its contractual obligations to collect municipal debts and informing the court of probationers' noncompliance do not make JCS a state actor.[4]

Even assuming for the sake of argument that JCS was a state actor as alleged by Plaintiffs, the crux of Plaintiffs' argument for due-process violations attempts to link the actions of JCS to those of the Clanton Municipal Court. (*See, e.g.*, Doc. 91, at 3 ("JCS was unlawfully delegated these judicial functions pursuant to its joint scheme with Clanton.").) However, Plaintiffs fail to demonstrate causation in their allegations. Despite the length of Plaintiffs' Complaint, Plaintiffs do not plead facts which would link JCS's actions with the decisions ultimately made by the municipal court. For instance, Plaintiffs allege

---

[4] Plaintiffs' attempt to distinguish *Smedley v. City of Ozark*, No. 1:12-cv-116-WKW, 2012 WL 1711295 (M.D. Ala. Mar. 9, 2012) in this due process section is unavailing. Plaintiffs misconstrue that case, which did not involve a plaintiff attempting to overturn his conviction (Doc. 91, at 4-5), but instead, as here, involved a plaintiff alleging an increase in fines and constitutional violations stemming from such alleged increases. In that case, the court noted that "even assuming a procedural deprivation, plaintiff may not maintain a procedural due process claim . . . pursuant to 42 U.S.C. § 1983 because he has not alleged that the State of Alabama has failed to provide adequate post-deprivation remedies." *Id.* at *2 (citing *Cotton v. Jackson*, 216 F.3d 1328, 1331 (11th Cir. 2000)). Plaintiffs' claims likewise fail here because they have not pleaded that the government denied them the ability to challenge the fees of which they complain.

that "when a JCS 'probationer' does not attend one of these "compliance" hearings, warrants are issued by the City citing the original offense that has already been adjudicated. These arrests result from JCS reporting that the 'offender' failed to comply with their probation order – that is, they failed to pay or appear at the JCS offices as JCS directed." (Doc. 74, ¶ 31.) These allegations, however often they reference "JCS," still fail to demonstrate that JCS was the *proximate cause* of any ultimate alleged violations of Plaintiffs' rights. Further, there is no allegation that the JCS reporting of the failure to comply with the probation order contained any false information. The municipal court had the authority and duty to decide whether or not a warrant was issued, no matter who provided the information. Clanton had the authority and duty to make arrests, no matter who provided the information forming the basis for that arrest. In other contexts noted by Plaintiffs, causation is lacking because the municipal court had the authority and duty to make indigency and willfulness determinations, and JCS could only act according to those determinations.

Plaintiffs try to hinge JCS's liability for the "joint scheme" and "joint enterprise" they allege existed (Doc. 91, at 4) on "requests" by JCS to the municipal court: "The allegations show JCS often making the request for arrest and as a joint participant in these extortion practices." (Doc. 91, at 4 (citing Doc. 74 ¶¶ 16-21, 25-46).) Plaintiffs have not demonstrated, however, that such a request or recommendation proximately causes a constitutional violation, and

further cannot demonstrate this, because of the intervening factor of judicial discretion, as judges are not bound by probation-officer requests or recommendations. *See U.S. v. Rosquete*, 199 F. App'x 728, 731 (11th Cir. 2005) ("[T]he PSI contains only the recommendation of the probation officer, which the district court is not bound to follow. *See* Fed. R. Crim. P. 32(f), (i) (noting that the defendant has the opportunity to object [to] the probation officer's recommendations in the PSI and the district court will then rule on the dispute).").

The heart of Plaintiffs' failure to state a claim, therefore, is that no matter how many times they assert the legal conclusion that "JCS and the City were joint and inextricably interwoven" in their actions, in order to survive a motion to dismiss for failure to state a claim, they still must allege constitutional violations of which JCS was the proximate cause. Plaintiffs fail to cite, and JCS cannot find, any authority demonstrating that providing forms or reporting noncompliance with court-ordered probation proximately causes a constitutional violation. Thus, JCS's basis for moving to dismiss the Complaint does not rest in an "argument that it is not **solely** responsible for the scheme" as Plaintiffs allege (Doc. 91, at 4), but instead stems from the fact that Plaintiffs have failed to demonstrate that JCS is liable at all because Plaintiffs have not pleaded, and cannot plead, how JCS proximately caused any of the alleged violations. Accordingly, Plaintiffs have failed to state a claim**.**

## B. Plaintiffs have not stated a claim for violation of their Fourth Amendment rights.

Plaintiffs' response regarding the Fourth Amendment claim also largely repeats the allegations in the Complaint and clings to the assertion that "JCS [worked] in concert with the City of Clanton" to allegedly violate Plaintiffs' rights. (Doc. 91, at 5.) As indicated earlier, however, this language describing a "joint scheme" (*Id.*) is Plaintiffs' attempt to allege that JCS is a state actor for purposes of § 1983 liability. *See Focus on the Family*, 344 F.3d at1277. But whether JCS is a state actor does not answer the question of whether JCS violated Plaintiffs' rights. Plaintiffs have not sufficiently pleaded how *JCS*'s actions, not those taken by the municipal court or Clanton, worked to violate Plaintiffs' Fourth Amendment rights.

The case cited by Plaintiffs as authority that arrest and detention constitutes a "seizure" under the Fourth Amendment, *Dunaway v. New York*, 442 U.S. 200 (1979), discussed such seizures in the context of a police seizure. *See id.* at 207 ("And respondent State concedes that the *police* lacked probable cause to arrest petitioner . . . .") (emphasis added); (*see also* Doc. 91, at 6.). Plaintiffs have not cited any authority in which a non-law-enforcement-related entity has been held liable for alleged Fourth Amendment violations, when that entity made no arrests and detained no one.

Plaintiffs instead assert that "[j]ust because JCS claims it lacked the authority to issue arrest warrants does not mean these actions did not result

from JCS's request under this joint system with the City." (Doc. 91, at 6.) Plaintiffs even go so far as to compare JCS to a get-away car driver in a bank robbery. (Doc. 91, at 6.) Plaintiffs further assert that this is a factual issue, not a pleading issue. (*Id.*) These points are incongruous. First, Plaintiffs' attenuated analysis as to why JCS should be liable for the alleged Fourth Amendment seizure violations stretches too far. The situation is not akin to a get-away car driver, as alleged by Plaintiffs, but instead is more similar to a party to a lawsuit suing a clerk for issuing an opinion by the judge that is adverse to his case. In that scenario, the clerk has nothing to do with the outcome of the party's case and would certainly not be liable for the judge's decisions. Likewise, JCS had nothing to do with the ultimate discretionary decisions of the municipal court nor the alleged wrongful arrests and detentions made by Clanton.[5] JCS had no ability to affect the actions taken or not taken by the court or the City which constitute the basis of Plaintiffs' Fourth Amendment claim and therefore cannot be held liable for any such actions. *See, e.g.*, *Smart*, 441 F. Supp. 2d at 644; *Schwartz*, 483 F. Supp. 2d at 196; *Valdes*, 390 F. Supp. 2d at 1105. This point

---

[5] JCS's involvement with the Plaintiffs and other probationers is in a specific window in the process, and the allegations of violations of Plaintiffs' rights all occur outside that window. JCS does not become involved with a probationer until after the court decides to enter a probation order. So JCS is not involved in the decision to put someone on probation and is not involved in the terms or any finding or lack of fining of indigency before that order is entered. Then JCS meets with and collects fees and fines from the probationer, and it reports to the court when there is a violation. After JCS reports it back to the court for a hearing, it is the court that decides what to do and whether to issue a warrant for arrest if the probation fails to appear. So any allegations of rights violations taking place at that hearing or thereafter are outside the window of JCS's involvement.

also illustrates Plaintiffs' failure to articulate how JCS proximately caused the alleged Fourth Amendment violations, which is required for their § 1983 claim.

Second, this matter does raise a pleading issue. Plaintiffs have an obligation to plead facts to demonstrate JCS's responsibility for Plaintiffs' alleged Fourth Amendment violations. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (noting that a complaint is insufficient "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"). Without articulating facts beyond conclusory assertions of a "system and scheme," Plaintiffs have failed to meet this burden, and their Fourth Amendment claim is due to be dismissed.

Additionally, Plaintiffs cite in a footnote that a Fourth Amendment seizure requires that a violation occur through "means intentionally applied." (Doc. 91, at p. 6, n. 3 (citing *Brower v. Cnty. of Inyo*, 489 U.S. 593 (1989).) Therefore, a Fourth Amendment violation "requires an *intentional* acquisition of physical control." *Carr v. Tatangelo*, 338 F.3d 1259, 1267 (11th Cir. 2003) (citing *Brower*, 489 U.S. at 596) (emphasis added). This intent is measured under "an objective reasonableness inquiry." *Id.* The only places in the Complaint which discuss any intentional conduct are in Plaintiffs' uncited quotes of the *Brower* case in footnotes 7 and 8 (Doc. 74 at pp. 51, 54), and those are just purported statements of law, not fact. Therefore, Plaintiffs fail to indicate how JCS proximately caused any restraint of Plaintiffs' "freedom of movement," and they also fail to demonstrate that any such restraint was intentional or objectively unreasonable

11

on the part of JCS. Thus, Plaintiffs fail to state a claim for a Fourth Amendment violation.

### C. Plaintiffs fail to state a claim for a Sixth Amendment violation.

In Plaintiffs' response regarding the Sixth Amendment claim, they once again rely on conclusory assertions of a "process and joint scheme" between JCS and Clanton that fail to pass pleading muster. (Doc. 91, at 8.) The crux of their claim, which Plaintiffs have now clarified centers on an alleged right-to-counsel violation, is that "at the point Plaintiffs' simple fines were transformed into a jail sentence, adequate counsel was not provided . . . ." (Doc. 91, at 9 (citing Doc. 74, ¶ 310).) Once again, however, Plaintiffs' vague "system" claims fail to demonstrate how JCS allegedly violated their rights and ignore the need to demonstrate proximate cause.

Plaintiffs assume that because they were allegedly placed on probation with JCS, every discretionary judicial decision made thereafter is somehow attributable to JCS. For instance, Plaintiffs claim that when fines were "transformed" into jail sentences, JCS was liable for not providing counsel. However, Plaintiffs do not plead, nor could they plead, that JCS made the sentencing determinations. Furthermore, Plaintiffs do not allege, nor could they, that JCS *proximately caused* this lack of counsel. Additionally, the case Plaintiffs cite to support their right to counsel discusses that right in the context of an "adjudication" and "meaningful adversarial testing." *See Alabama v. Shelton*,

12

535 U.S. 654, 667 (2002). These terms denote a court proceeding. Thus, whether or not counsel was provided, denied, required, or not required, Plaintiffs fail to indicate any way in which JCS would have or could have a hand in that decision.

Plaintiffs further assert a type of conspiracy claim under this point in Plaintiffs' response brief (*see* Doc. 91, at 10 ("JCS acted in concert with its co-conspirator Clanton under this system")), as well as in several places in the Complaint. (*See, e.g.*, Doc. 74, ¶¶ 236, 242, 251, 280, 308, 323, 338, 365, and 368.) A conspiracy in a § 1983 action "requires factual allegations showing a meeting of the minds." *Goldschmidt v. Patchett*, 686 F.2d 582, 585 (7th Cir. 1982). **Conclusory allegations are insufficient**. *Id.* The elements of conspiracy are: "(1) the existence of an agreement between two or more state actors (or a state actor and a private entity); (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of the goal." *Stein v. Janos*, 269 F. Supp. 2d 256, 261 (S.D.N.Y. 2003). In the Eleventh Circuit, "the plaintiff must show that the parties 'reached an understanding' to deny the plaintiff his rights, the parties' actions must actually impinge on a federal right, and the plaintiff must prove an actionable wrong." *Allaben v. Howanitz*, 579 F. App'x 716, 718 (11th Cir. 2014) (citation omitted).

Conspiracy under § 1983 must also be pleaded in some detail: "Complaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights

13

are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct." *Corsini v. Nast*, 613 F. App'x 1, 3 (2d Cir. 2015). To state a claim, Plaintiffs must plead sufficient "facts showing that the defendants shared a 'unity of purpose or common design' to injure the plaintiff. Where the complaint makes only conclusory allegations of a conspiracy . . . and fails to allege facts suggesting an agreement or meeting of the minds among the defendants, the court may properly dismiss the complaint." *Sales v. Murray*, 862 F. Supp. 1511, 1517 (W.D. Va. 1994) (internal citations omitted). Boilerplate allegations of an agreement are insufficient. *See Theis v. Smith*, 676 F. Supp. 874, 877 (N.D. Ill. 1988). "[A]n allegation of parallel conduct and a bare assertion of conspiracy will not suffice" and "[w]ithout more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57, 127 S. Ct. 1955, 1966 (2007).

    In both the Complaint (Doc. 74) and Plaintiffs' response brief (Doc. 91), Plaintiffs make mere conclusions that a conspiracy existed between Clanton and JCS without demonstrating any intent to "inflict an unconstitutional injury," nor any "understanding" between JCS and Clanton to inflict such an injury, as required to state a claim. *See Stein*, 269 F. Supp. 2d at 261; *Allaben*, 579 F. App'x at 718. Instead, Plaintiffs treat the existence of a probation services contract and JCS's reporting of compliance with probation terms as proof of conspiracy. That

14

the municipal court may have imposed incarceration, after a series of events unrelated to JCS's probation services, is not enough to plead a "conspiracy." Nowhere in the Complaint and nowhere in Plaintiffs' response brief do Plaintiffs demonstrate that JCS and Clanton had any understanding to deny Plaintiffs their rights. As such, Plaintiffs' allegations of conspiracy fail.

Finally, to clarify, Plaintiffs boldly state in their response brief that "JCS does not deny" that "Plaintiffs were jailed for an inability to pay fines without meaningful assistance of counsel." (Doc. 91, at 10.) This assertion is not only untrue, but it neglects to recognize that JCS has filed a motion to dismiss, not an answer. *See Brown v. Crawford Cnty.*, 960 F.2d 1002, 1010 (11th Cir. 1992) ("A motion to dismiss challenging the legal sufficiency of the complaint to state a claim for which relief may be granted preempts the necessity of a defendant's filing an answer until the motion is decided by the district court."). Since the court, in ruling on a motion to dismiss, "assumes the factual allegations in the complaint are true and gives the plaintiff the benefit of all reasonable factual inferences," JCS has focused on the legal sufficiency of the Complaint in its motion to dismiss, not on the veracity of the facts. *See Goodridge v. Siemens Energy, Inc.*, 276 F.R.D. 540, 541 (N.D. Ala. 2011). As such, JCS rejects this statement in the Plaintiffs' response brief.

15

As noted above, Plaintiffs fail to demonstrate that JCS was the proximate cause of any alleged denial of counsel; accordingly, they fail to state a claim for a Sixth Amendment violation.

### D.   Plaintiffs fail to state a claim for violation of the Eighth Amendment.

One independent and significant reason that the Plaintiffs' Complaint fails to state a claim against JCS for violating the Eighth Amendment is because the municipal court, not JCS, imposed the monthly probation fee, and the contract between JCS and the City of Clanton provided that JCS would not charge probationers who were determined by the court to be indigent. (*See* Doc. 86-1 at CM/ECF designated page 3 (Ex. A to the Clanton/JCS contract at ¶ 5).) JCS did not have a duty or authority to make the indigency determinations and only complied with the court's orders. Even if the $40-per-month probation fee were "punishment" or an "excessive fine" and violated the Eighth Amendment, it does not follow that JCS is responsible for a "punishment" or "fine" that it did not impose. JCS operated to carry out the municipal court's orders, but it does not decide who gets what "punishment," who gets determined to be indigent, or the substance of the judge's order. That important distinction creates a causal gap in the commission of an Eighth Amendment violation (if any occurred). For there to be liability under § 1983, the defendant must be *directly* involved in the alleged violation of the plaintiff's constitutional rights. *See Delany v. District of*

*Columbia*, 659 F. Supp. 2d 185, 192 (D. D.C. 2009) ("The § 1983 claims against these officials fail because (1) there are no allegations that any of these Defendants was personally involved in any of the alleged violations of Plaintiffs' constitutional rights . . . .").

The Plaintiffs do not cite any case in their response brief that demonstrates JCS could be held responsible for an Eighth Amendment violation under the facts pleaded in the Complaint. They cite *State v. Adams*, 91 So. 3d 724 (Ala. Crim. App. 2010), but that case involves the constitutionality of a statute requiring sex offenders to register an address before their release from prison and held that requiring indigent homeless sex offenders to provide an address violated the Equal Protection clause and the Eighth Amendment because it punished or criminalized the status of being homeless. That is not the case here, because even if it is assumed that the $40 probation fee is "punishment" or a "fine" (and JCS disputes that), it is imposed on anyone who does not happen to have the available funds to pay and needs more time to pay (which doesn't necessarily make someone "indigent") and, more significantly, the court and the contract with JCS permitted the court to determine someone was indigent and excuse that indigent person from paying the probation fee. The statute at issue in *Adams* had no such provision for indigency or homelessness.

Plaintiffs claim that court costs are set by Alabama statues and cite *Ex parte Ellis*, 502 So. 2d 694 (Ala. 1986), but that case just says that a court

17

cannot impose an additional fine for using a radar detector when nothing makes using a radar detector illegal. It does not say anything about a court imposing a monthly fee on a person who does not currently have available funds and needs or wishes to defer payment of the fine in order to cover the cost of the probation supervision. In fact, Ala. Code § 12-14-2(a) provides specifically that a "municipality . . . may provide for probation services," and nothing prevents imposing the costs of the probation on the persons subject to the probation. It is not — as Plaintiffs suggest by citing Art. IV, § 89, of the Alabama Constitution — enacting a municipal ordinance contrary to a state statute. It is not the same as *Ellis* where a fine was being imposed for an action that was not illegal.

Additionally, merely alleging that the "fine" or "punishment" exceeds state law (and JCS does not agree that it does) is insufficient to state an Eighth Amendment claim because it does not necessarily follow that the fee characterized as a "fine" or "punishment" is constitutionally excessive or cruel and unusual. The state-law limit may be well below what is constitutionally excessive, and alleging a violation of state law does not equate to a sufficient allegation of a violation of the Eighth Amendment.

Thus, Plaintiffs have failed to make the case that the facts alleged in the Complaint state a claim for violation of the Eighth Amendment against JCS, and for the reasons stated above and in JCS's motion to dismiss, the purported Eighth Amendment claim is due to be dismissed.

### E. Plaintiffs fail to state an equal-protection claim.

Plaintiffs' response brief focuses on their allegedly disparate treatment with regard to the assessed fines and probation. (*See* Doc. 91, at 14-15.) In doing so, Plaintiffs have missed the basis of JCS's motion to dismiss this claim: that Plaintiffs failed to allege discriminatory intent.

To establish an equal-protection violation, "[d]iscriminatory intent must be shown; arbitrary application without discriminatory intent is insufficient." *Hale v. City of Lanett*, No. 3:12CV584-TFM, 2012 WL 3890132 at *2 (M.D. Ala. 2012) (citing *E & T Realty v. Strickland*, 830 F.2d 1107 (11th Cir. 1987)) (granting defendant's motion to dismiss); *see also Village of Arlington Heights v. Metro. Housing Dev. Corp.*, 429 U.S. 252, 264-65 (1977) ("Proof of . . . discriminatory intent or purpose is required to show a violation of the Equal Protection Clause."); *Parks v. City of Warner Robins*, 43 F.3d 609, 616 (11th Cir. 1995) ("[P]roof of discriminatory intent or purpose is a *necessary prerequisite* to any Equal Protection Clause claim.") (emphasis added); *Mencer v. Hammonds*, 134 F.3d 1066, 1070 (11th Cir. 1998) ("A government actor, however, *cannot violate a plaintiff's equal protection rights unless the defendant has the intent to discriminate*.") (emphasis added). Plaintiffs do not address this argument articulated in the motion to dismiss. Instead, Plaintiffs allege that JCS's motion to dismiss "engages in factual argument not pertinent to its motion." (Doc. 91, at 15.)

A prerequisite to stating a claim, however, is exactly the type of legal analysis pertinent to a motion to dismiss based on failure to state a claim. Since Plaintiffs still fail to plead any discriminatory intent on the part of JCS, or to even mention this element, their equal-protection claim lacks an essential pleading requirement to survive a motion to dismiss. *See, e.g.*, *Swanson v. Pitt*, 330 F. Supp. 2d 1269, 1282 (M.D. Ala. 2004) (dismissing for failure to state a claim an equal-protection claim that did not allege discriminatory intent). Since Plaintiffs continue to ignore this key element to the equal-protection analysis, their claims are due to be dismissed.

## II. The Declaratory and Injunctive Relief Requested is Moot as to JCS.

It is undisputed that the contract between Clanton and JCS is no longer in effect (Doc. 74 at ¶ 21), and that JCS no longer conducts business in the state of Alabama (Doc. 74 at ¶ 12). Declaratory relief, like injunctive relief, is a form of prospective relief against a defendant. A plaintiff can obtain declaratory relief only where the plaintiff "assert[s] a reasonable expectation that the injury they have suffered will continue or will be repeated in the future." *Malowney v. Federal Collection Deposit Group*, 193 F.3d 1342, 1347 (11th Cir. 1999) (holding that plaintiffs did not have standing to prosecute a declaratory-relief count in a multi-count complaint because "the amended complaint does not contain any allegations which could reasonably support a finding that the [plaintiffs] are

likely to be subject to future injury"). The prospective injury must not merely be in the future, but must also be "a 'real and immediate threat' of future injury." *Koziara v. City of Casselberry*, F.3d 1302, 1305 (11th Cir. 2004) (quoting *Nat'l Parks Conservation Ass'n v. Norton*, 324 F.3d 1229, 1241 (11th Cir. 2003)); *see also Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1274 (11th Cir. 2003) (recognizing that to establish Article III standing to seek injunctive or declaratory relief, the "Supreme Court has held that where a plaintiff seeks these types of prospective relief, it must demonstrate a 'real and immediate threat' of future injury"). "[T]o have standing to obtain forward-looking relief, a plaintiff must show a sufficient likelihood that he will be affected by the allegedly unlawful conduct in the future." *Johnson v. Bd. of Regents*, 263 F.3d 1234, 1265 (11th Cir. 2001).

The contract between JCS and Clanton has been canceled. JCS does not do business in Clanton or anywhere else in Alabama. There is no "real and immediate threat" of future injury by JCS to the Plaintiffs. Indeed, there is no threat of future injury to the Plaintiffs by JCS at all due to the cancelation of the contract and JCS's cessation of business in this state. *See Adler v. Duval County Sch. Bd.*, 112 F.3d 1475, 1477 (11th Cir. 1997) ("When the threat of future harm dissipates, the plaintiff's claims for equitable relief becomes moot because the plaintiff no longer needs protection from future injury. This is precisely what happened in this case.").

21

The Plaintiffs argue that this Court should move forward in awarding prospective relief because there is a "real and actual controversy" concerning the validity of the contract. (Doc. 91 at 16). As explained above, this is not the standard that the Plaintiffs must show in order to be granted prospective relief. The cancellation of the contract and JCS's withdrawal from Alabama has rendered the chances of future harm to the Plaintiffs nil. Accordingly, any request for declaratory relief against JCS is moot, and the Plaintiffs lack standing to continue to prosecute a case for prospective relief of any kind, including declaratory relief.

## III.   The Statute of Limitations Bars Plaintiffs' Claims.

Plaintiffs rely on *Rademaker v. E.D. Flynn Exp. Co.*, 17 F.2d 15 (5th Cir. 1927), to contend that the statute of limitations is tolled by the filing of a motion to amend the complaint. One distinguishing fact between *Rademaker* and the present case is that in *Rademaker* the plaintiff actually served the new defendant before the statute of limitations ran. *See Rademaker*, 17 F.2d at 17 ("process was issued and served upon defendant, before any right of action against it was barred"). But perhaps more significantly, the plaintiff in *Rademaker* was ignorant of the identity of the newly added defendant and filed to amend to add the new defendant shortly after it discovered that the new defendant had some ownership interest in vessel. In the present case, the Plaintiffs were obviously aware they were on JCS probation and the involvement

of JCS well before the original lawsuit was filed. There is no good cause for the delay in adding JCS.

Even if the Court uses the date of filing of the motion to amend (April 27, 2016) (Doc. 64), any claims accruing before April 27, 2014, are barred by the statute of limitations. Under § 1983, a cause of action accrues when "'plaintiff knows or has reason to know of the injury which is the basis of the action.'" *Lavellee v. Listi*, 611 F.2d 1129, 1131 (5th Cir. 1980) (quoting *Cox v. Stanton*, 529 F.2d 47, 50 (4th Cir. 1975)). The allegations of the Complaint show that some of the Plaintiffs knew or had reason to know of their alleged injuries, and the fact that JCS purportedly caused them, well before April 27, 2014. Plaintiff Michael Littlefield was allegedly placed on probation with JCS in late June 2010 (Doc. 74 at ¶¶ 77, 83), and was allegedly arrested and jailed "within a few months" (Doc. 74 at ¶ 86). Plaintiff Stedman Kine was allegedly placed on probation with JCS in August 2011 (Doc. 74 at ¶¶ 101, 103) and was arrested in 2012 for, allegedly, "his inability to pay these fines" (Doc. 74 at ¶ 114). Plaintiff Deangelo Barnett was allegedly assigned to JCS in September 2010 (Doc. 74 at ¶¶ 154, 156) and was allegedly arrested in June 2011 (Doc. 74 at ¶ 165). Plaintiff Tracy Dubose was allegedly placed on probation with JCS in May 2013 and began paying monthly fines and fees to JCS. (Doc. 74 at ¶¶ 182, 183, 186.)

These Plaintiffs knew when they were first put on probation with JCS, knew when they were charged fees, and for those arrested, knew when they were

23

arrested. Their claims began to run then, which was well before two years prior to the filing of the motion for leave to amend the complaint in this case. Thus, the Plaintiffs' claims against JCS are barred by the statute of limitations.

## IV.   JCS Is Entitled to Quasi-Judicial Immunity.

JCS is entitled to quasi-judicial immunity on the Plaintiffs' claims because all the claims arise from JCS's carrying out probation orders issued by the municipal court. Plaintiffs begin their response by contending that by claiming quasi-judicial immunity, JCS concedes it is a state actor for § 1983 purposes. But private individuals and entities can have quasi-judicial immunity when carrying out court orders or functions, just as a private individual serving on a grand jury can have judicial or quasi-judicial immunity. *See Butz v. Economou*, 438 U.S. 478, 509, 98 S. Ct. 2894, 2912 (1978). While JCS can in this manner reconcile what may appear as a contradictory position on the surface, it is the Plaintiffs who have the irreconcilable contradictory position in arguing that JCS is a state actor for § 1983 liability, but when it comes to analyze quasi-judicial immunity, they say JCS is a "private contracting party," not governmental.

In arguing against quasi-judicial immunity, the Plaintiffs attempt to portray their claims as narrower than the Complaint suggests or even other parts of their response brief indicate. Plaintiffs contend they are not challenging judicial or quasi-judicial decisions about convictions or sentences, but they do complain about orders imposing probation fees, warrants, confinement,

24

purported threats or extortionate statements, etc., and claim that JCS's alleged involvement in these activities (though most of them actually do not involve JCS) violate a laundry list of constitutional rights. Plaintiffs contend that the "subject of this case is the contract, city policies and practice under the joint system that the Defendants have established" (Doc. 91 at 20), but the contract with JCS only calls for JCS to supervise probationers and provides for the municipal court to determine if a probationer is indigent and waive JCS's fees. (Doc. 86-1.) Under that contract, JCS functions as auxiliary court personnel carrying out probation orders entered by the municipal judge and reporting back to the municipal court. "Immunity 'applies to all acts of auxiliary court personnel that are basic and integral parts of the judicial function.'" *Delany v. District of Columbia*, 659 F. Supp. 2d 185, 192 (D. D.C. 2009) (quoting *Sindram v. Suda*, 986 F.2d 1459, 1461 (D.C. Cir. 1993). Judicial immunity or quasi-judicial immunity includes probation activities, scheduling of hearings, calculation of probation periods, hearing notices, court filings, posting of payments, and accepting a person for incarceration under judicial orders of commitment. *Delany*, 659 F. Supp. 2d at 194-95 (citing *Doyle v. Camelot Care Ctrs., Inc.*, 305 F.3d 603, 622 (7th Cir. 2002)); *Tucker v. City of Montgomery Bd. of Comm'rs*, 410 F. Supp. 494, 511 (M.D. Ala. 1976); *see also Galvan v. Garmon*, 710 F.2d 214, 215-16 (5th Cir. 1983) (citing *Spaulding v. Nielsen*, 599 F.2d 728 (5th Cir. 1979), and stating that quasi-judicial immunity is available for probation officers when

they are "acting at the direction of the court" instead of "acting on their own initiative").

The Plaintiffs assert that JCS does not derive immunity from the City of Clanton, but JCS's quasi-judicial immunity derives from its appointment by and actions in connections with the Clanton Municipal Court. It is JCS's actions in connection with the probation services ordered by the municipal court's probation orders that serve as the foundation for the Plaintiffs' Complaint, and JCS has quasi-judicial immunity for those actions.[6]

Finally, Plaintiffs suggests that judicial immunity is an issue that is more properly addressed at summary judgment, but immunity is not just immunity from liability, it is immunity from suit.[7] Also, if the facts as pleaded in the Complaint demonstrate that what is being complained about are actions with an "integral relationship to the judicial process,"[8] then the claims should be dismissed.

---

[6] *See Roland v. Phillips*, 19 F.3d 552, 555 (11th Cir. 1994); *Hughes v. Chesser*, 731 F.2d 1489 (11th Cir. 1984); *Spaulding v. Nielsen*, 599 F.2d 728 (5th Cir. 1979); and *Galvan v. Garmon*, 710 F.2d 214, 215-16 (5th Cir. 1983).

[7] *See Fleming v. Dowdell*, 434 F. Supp. 2d 1138, 1154 (M.D. Ala. 2005), *aff'd* 182 F. App'x 946 (11th Cir. 2006) (stating that "judicial immunity is an immunity from suit, not just immunity from damages liability" and citing *Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978)).

[8] *Roland*, 19 F.3d at 555.

**V.     Plaintiffs' Complaint Is Due To Be Dismissed Because This Court Lacks Subject-Matter Jurisdiction over This Case Under the *Rooker-Feldman* Doctrine and Because It Is an Improper Collateral Attack on Judgments in Criminal Cases.**

The Plaintiffs have not submitted controlling authority refuting JCS's arguments that this Court lacks subject-matter jurisdiction in this case under the *Rooker-Feldman* doctrine.[9] The Plaintiffs contend that they do not challenge their underlying convictions but only postjudgment actions. That characterization is erroneous because the Plaintiffs challenge the probation order entered as a result of the conviction and the carrying out of that order. The Plaintiffs even ask in their Complaint that the Court declare "void" any "current probation and fees for simple fines" which is a specific and direct challenge to orders of the municipal court. (Doc. 74 at p. 75, ¶ e.)

The Plaintiffs rely on *Powers v. Hamilton County Public Defender Commission*, 501 F.3d 592 (6th Cir. 2007). *Powers* involved claims against a public defender commission based on its policy of not seeking indigency hearings on behalf of criminal defendants facing jail time for unpaid fines, which is substantially different from the role of JCS. The public defenders in *Powers* were supposed to be advocates for the plaintiffs in that case, while JCS had no such duty to the Plaintiffs in this case. Integral to the Sixth Circuit's decision to allow the § 1983 claim to proceed was its conclusion that success on the § 1983 claim

---

[9] *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

would in no way impugn the validity of the underlying state court judgment. *Powers*, 501 F.3d at 604. That is, a determination that Powers should have been represented by the public defender would have had no bearing on the state court's sentence. *Powers*, 501 F.3d at 605. Here, however, the requested relief goes to the very heart of the probation orders. JCS follows the directions of the municipal court in the probation orders, monitors Plaintiffs' probation, and collects the fines and fees ordered by the court. Ordering JCS to pay damages in the amount of the fees and fines collected in accordance with such orders is not a "purely procedural" attack like the one in *Powers*. *Powers*, 501 F.3d at 605.

JCS contends that this case is more like *Goodman v. Sipos*, 259 F.3d 1327 (11th Cir. 2002), than it is like *Powers*. In *Goodman v. Sipos*, 259 F.3d 1327 (11th Cir. 2002), the plaintiff brought a claim under 42 U.S.C. § 1983 asserting that her and her son's rights were violated by a fraudulent affidavit submitted by an employee of a state agency in a child-custody proceeding and by a threatened arrest if the plaintiff did not return her son to the state agency. The court found that the plaintiff was essentially challenging the order issued by a state court and that the lawsuit was barred by the *Rooker-Feldman* doctrine, finding, among other things, that the plaintiff "had an opportunity to object, and did object, to the alleged threats . . . and the effect of those threats." *Goodman*, 259 F.3d at 1334. Similarly, the Plaintiffs in the present case are challenging the manner of JCS carrying out of the court's probation orders, and they could have

28

raised those issues with the municipal court. Just as the *Rooker-Feldman* doctrine barred the claims in *Goodman*, it also bars the Plaintiffs' claims here. Plaintiffs attempt to distinguish *Goodman* by contending the probation orders are "post-judgment," but the probation orders are an integral part of the sentences and judgments of the court. Plaintiffs' Complaint both directly and indirectly challenges those orders.

The Plaintiffs next attempt to distinguish *Citizenship Trust v. Keddie-Hill*, 68 So. 3d 99 (Ala. 2011), but any distinguishing facts are not material. In *Citizenship Trust*, there was an assessment of a fee, and the Plaintiffs in the present case challenge, among other things, the assessment of a fee for probation. One fee was for a DNA database, and the fee here was for probation services. It is still an improper collateral attack on the state-court judgments and orders. The Plaintiffs in the present case are challenging state-court judgments dealing with the imposition of probation fees and the consequences of not paying them, and the *Citizenship Trust* case demonstrates that the Plaintiffs did have a remedy and should not be permitted to collaterally attack those fees and resulting consequences in a separate civil lawsuit, whether in state court or federal court. *Citizenship Trust* involved a challenge that the fee was unconstitutional, and the Plaintiffs here claim that the probation orders, fees, and consequences arising from the failure to comply with those violated their constitutional rights. But those issues could be raised in the state-court

29

proceedings, and this Court should not exercise subject-matter jurisdiction over this collateral attack on those cases.

## VI.   JCS Is Entitled to Qualified Immunity.

Plaintiffs' reliance on *Richardson v. McKnight*, 521 U.S. 399 (1997), as a blanket bar on private contractors being afforded qualified immunity is misplaced. The holding in that case was narrow, as recognized by the Supreme Court when, in *Filarsky v. Delia*, 132 S. Ct. 1657 (2012), it wrote that *Richardson* "was a self-consciously 'narrow[ ]' decision," and was limited to the facts before it—private prison guards working for a private company that was running a private prison. *Filarsky*, 132 S. Ct. at 1667. Thus, where *Richardson* addressed a situation involving the running of a private facility with "limited direct supervision by the government," the facts here demonstrate that JCS personnel performed their duties directly pursuant to the probation orders entered by the court, and subject to substantial involvement and supervision by the municipal judge and court magistrate. *Id.* (internal quotation marks omitted). As such, the present action is more like the situation in *Filarsky*, where the defendant was a private attorney hired by a municipality to aid in an investigation. Indeed, Plaintiffs attempt to distinguish this action from *Filarsky* on the very basis of the commonality of the cases—the defendant's government counterparts in *Filarsky* were afforded qualified immunity just like public-

30

employee probation officers under the circumstances of this case would be entitled to qualified immunity. (Doc. 91 at 28.)

Having failed to demonstrate that qualified immunity cannot apply in this case, and having failed to show that the JCS actions of which Plaintiffs complain were not discretionary functions, Plaintiffs bore the showing violations of his clearly established constitutional rights. As discussed in JCS's motion to dismiss and above, Plaintiffs have failed completely to show that JCS violated their constitutional rights. And, they have failed to demonstrate that the constitutional rights they allege JCS violated were clearly established at the time of the alleged violations. For example, they argue that they were "discriminated against because of his poverty" by being placed on probation (Doc. 91 at 29), but they have not alleged that JCS made any decisions about who would be placed on probation—that decision was left entirely and exclusively to the municipal judge. They complain that they were "incarcerated due to their inability to pay the fines and fees demanded by JCS and Clanton," but they do not and cannot allege JCS incarcerated anyone. Plaintiffs have simply failed to allege facts demonstrating that JCS officials violated their clearly established constitutional rights; as a result, JCS is entitled to qualified immunity.

31

## Conclusion

The Plaintiffs' Second Amended and Restated Complaint should be dismissed because the allegations relating to constitutional claims are insufficient to state claims against JCS, because the declaratory and injunctive relief sought is moot, because at least some of the Plaintiffs' claims are barred by the statute of limitations, because JCS is entitled to quasi-judicial immunity or qualified immunity (or both), because this Court lacks subject-matter jurisdiction over the Complaint under the *Rooker-Feldman* doctrine, and because the Complaint is the complaint is an improper collateral attack on state-court judgments. JCS requests that the Court dismiss Plaintiffs' Second Amended and Restated Complaint as to Judicial Correction Services, LLC, or dismiss those counts deemed warranted by the Court.

Respectfully submitted on February 14, 2017.

*s/ Larry S. Logsdon*
Larry S. Logsdon
Voice:  (205) 874-0341
Fax:     (205) 874-3241
llogsdon@wallacejordan.com

*s/ Michael L. Jackson*
Michael L. Jackson
Voice:  (205) 874-0315
Fax:     (205) 874-3251
mjackson@wallacejordan.com

s/ *Wesley K. Winborn*
Wesley K. Winborn
Voice:  (205) 874-0310
Fax:     (205) 874-3276
wwinborn@wallacejordan.com

Of Counsel:
Wallace, Jordan, Ratliff & Brandt, L.L.C.
P.O. Box 530910
Birmingham, Alabama 35253
(205) 870-0555

s/ *Wilson F. Green*
Wilson F. Green
Voice:  (205) 722-1018
wgreen@fleenorgreen.com

Of Counsel:
Fleenor & Green LLP
1657 McFarland Blvd. N., Ste. G2A
Tuscaloosa, Alabama 35406
(205) 722-1018

Attorneys   for   Defendants   Judicial
Correction Services

## Certificate of Service

I certify that on February 14, 2017, I served a copy of the foregoing motion on all counsel by the Court's CM/ECF electronic-filing system, by U.S. Mail, or by email as follows:

William M. Dawson Jr., Esq.
Attorney at Law
1736 Oxmoor Road
Birmingham, AL  35209
bill@billdawsonlaw.com

Matthew Swerdlin, Esq.
Attorney at Law
1736 Oxmoor Road, Suite 101
Homewood, AL  35209
matt@attorneyswerdlin.com

G. Daniel Evans, Esq.
Alexandria Parrish, Esq.
The Evans Law Firm
1736 Oxmoor Road; Suite 101
Birmingham, AL  35209
gdevans@evanslawpc.com
ap@evanslawpc.com

F. Lane Finch Jr., Esq.
Brian C. Richardson, Esq.
Swift, Currie, McGhee & Hiers, LLP
2 North 20th Street, Suite 1405
Birmingham, AL  35203
lane.finch@swiftcurrie.com
brian.richardson@swiftcurrie.com

J. Mitchell McGuire, Esq.
McGuire & Associates LLC
31 Clayton Street
Montgomery, AL  36104
jmcguire@mandabusinesslaw.com

James W. Porter II, Esq.
Richard Warren Kinney, Esq.
Porter, Porter & Hassinger PC
P.O. Box 128
Birmingham, AL 35201-0128
jwporterii@pphlaw.net
wkinney@pphlaw.net

Gregory C. Cook, Esq.
L. Conrad Anderson IV, Esq.
Will Hill Tankersley, Esq.
Chase T Espy, Esq.
Balch & Bingham LLP
P.O. Box 306
Birmingham, AL  35201
gcook@balch.com
canderson@balch.com
wtankers@balch.com
cespy@balch.com

_s/ Michael L. Jackson_
Michael L. Jackson
mjackson@wallacejordan.com